JjDUFRESNE, Judge.
This case arises out of an automobile accident that occurred on January 26, 1996, on the I — 10 Expressway near the Bonnabel overpass in Metairie. Mike Tyler was the owner of the 1986 Ford Mustang that was involved in the accident with the plaintiffs. Wade Jewell was driving the Mustang at the time of the accident. As a result of injuries sustained in the accident, the plaintiffs filed suit against Wade Jewell as driver of the vehicle and State Farm Mutual Insurance Company as his insurer under the family automobile insurance policy maintained by his parents. Also made defendants were Progressive Insurance Company as the insurer of the Mustang[1] and Allstate Insurance Company as the uninsured/underinsured motorist carrier of one of the plaintiffs.
When State Farm denied coverage and failed to provide Wade Jewell with a legal defense, the Jewells retained their own attorney and brought a cross-claim against State Farm for coverage. State Farm took the position that Wade Jewell, a resident relative of his parents’ home and Dan insured under the policy, did not have coverage for operating the vehicle because he was doing so without the permission of the owner. The trial court bifurcated the case and tried the issue of whether the State Farm policy provided coverage to Wade Jewell.
At trial, the evidence showed that on the night of the accident, Wade Jewell was visiting his girlfriend, Kyla Fremin, who lived with Lesley Costa in Metairie. During the course of the evening, Ms. Costa was on the telephone arguing with Mike Tyler, her fiancé. Their relationship was ending and they were arguing over how Mr. Tyler’s Mustang, which was being kept at Ms. Costa’s house, would be returned to him. Mr. Tyler was insisting that Ms. Costa return it to him, but Ms. Costa refused and wanted Mr. Tyler to make the arrangements to come get the car. During the course of this telephone argument, Ms. Costa asked Mr. Jewell to return the car to Mr. Tyler, but he declined to do so. Ms. Costa then spoke to her friend Kyla Fremin and asked her to persuade Mr. Jewell to return the car for her. In the meantime, Ms. Costa made plans to go out for the evening, and she informed Mr. Jewell and Ms. Fremin that she was putting the keys to the Mustang in the mailbox and that she did not care what was done with the vehicle. Mr. Jewell and Ms. Fremin subsequently took a ride to the lakefront where they discussed the issue of the Mustang. At that point, they decided to help Ms. Costa by returning the car to Mr. Tyler. Mr. Jewell *978 returned to Ms. Costa’s house, retrieved the keys from the mailbox, got into the Mustang and proceeded to drive to Mr. Tyler’s house located in New Orleans East. Ms. Fremin followed him in another vehicle in order to give him a ride back. On the way to Mr. Tyler’s house, the automobile accident occurred. Mr. Tyler learned of the accident and went to the Isscene. He talked to the state trooper who was investigating the accident and told him that he was the owner of the vehicle. However, he did not indicate to the officer that there was any impropriety in Wade Jewell driving the vehicle.
At trial, Mr. Tyler testified that in January of 1996, he kept his Mustang at Ms. Costa’s house because he did not have a safe place to keep it. According to Mr. Tyler, he had given Ms. Costa permission to drive his car on a regular basis, and she, in fact, had driven the Mustang on many occasions. In addition, she had her own set of keys. With regard to the night of the accident, Mr. Tyler testified that he did not give Mr. Jewell or anyone, other than Ms. Costa, permission to drive his car, nor was he asked to give anyone permission. However, during the course of his testimony, it became apparent that Mr. Tyler probably would not have had a problem with Mr. Jewell returning the Mustang to him that night. Mr. Tyler claimed that after the accident, he thought about pressing charges against Mr. Jewell for driving his car, but his real goal was simply to get money to repair the car. During his testimony, Mr. Tyler admitted that Mr. Jewell had driven his Mustang at Mr. Tyler’s request on one occasion prior to the accident.
Wade Jewell also testified at trial. According to Mr. Jewell, he had met Mike Tyler at Lesley Costa’s house about two to three months before the accident. In accord with the testimony of Mr. Tyler, Mr. Jewell claimed to have driven Mr. Tyler’s car on one prior occasion with Mr. Tyler’s permission and specific instruction as to where to drive the car. In addition, he estimated that he had ridden in the car ten to fifteen times before the accident with either Mr. Tyler or Ms. Costa driving. Mr. Jewell further | ¿testified that he considered Mr. Tyler to be one of his friends and thought that he was doing him a favor by returning his car. Mr. Jewell admitted that he did not have permission from Mr. Tyler to drive the car on the night of the incident.
The deposition testimony of Lesley Cos-ta was introduced at trial. That testimony established that she had the Mustang at her house, she had a set of keys to it, and she had driven it on numerous occasions. Her testimony indicated that she had permission to use the car as she pleased. Ms. Costa further testified that Mr. Tyler never told her not to let anyone else, including Mr. Jewell, to drive the car.
The deposition testimony of Kyla Fre-min was also introduced at trial. She testified that she and Mr. Jewell thought they were doing Mr. Tyler and Ms. Costa a favor by returning the Mustang that night. According to Ms. Fremin, Mr. Jewell got into the Mustang and was proceeding directly to Mr. Tyler’s house when the accident occurred. There was never any indication that Mr. Jewell was taking the ear for his own use or for the purpose of joy riding. Their only intention was to get the car back to Mr. Tyler.
After considering the evidence presented, the trial judge concluded that the evidence did not establish that Wade Jewell had actual or implied permission to drive Mr. Tyler’s car, and therefore, the State Farm policy did not provide insurance coverage for the accident in this case. Following this judgment, all plaintiffs, and defendants Wade Jewell and Allstate, jointly filed a motion for appeal. Subsequently, the plaintiffs, as well as the defendant Wade Jewell, filed a partial motion to dismiss their petition and order of appeal against State Farm only. As such, it is only Allstate Insurance Company which is now appealing.
*979 |fiOn appeal, Allstate argues that coverage should be provided under the State Farm policy because no unlawful act was being committed by Mr. Jewell at the time of the accident, and thus, he was in lawful possession of the vehicle. Allstate also argues that the policy was ambiguous because it did not provide any definition of lawful possession, and thus, the policy should be interpreted in favor of the insured. Allstate lastly argues that Mr. Jewell had actual and/or implied permission to operate the vehicle so coverage should be afforded.
The insurance policy at issue extends coverage to the use, by an insured, of a non-owned car. The policy further states that a non-owned ear must be a car in the lawful possession of the person operating it. In the present case, the trial court’s finding that there was no coverage was based on his belief that Mr. Jewell did not have permission to use the non-owned vehicle. Based on the wording of the policy, we find that the focus should not have been solely on the issue of permission but rather whether Mr. Jewell had lawful possession of the Mustang.
“Lawful” is defined in Black’s Law Dictionary, 5 th ed., as “legal; warranted or authorized by the law; having the qualifications prescribed by law; not contrary to nor forbidden by the law.” The term “possession” is defined therein as “the detention and control, or the manual or ideal custody, of anything which may be the subject of property, for one’s use and enjoyment, either as owner or as the proprietor of a qualified right in it, and either held personally or by another who exercises it in one’s place and name.” In Simms v. Butler, 97-0416 (La.12/2/97), 702 So.2d 686, the Louisiana Supreme Court, in footnote five, recognized that some insurance companies have broadened the coverage offered under their non-owned | r,auto clauses. The court stated: “Some policies cover, in addition to use with permission, ‘use which is reasonably believed to be with the permission of the owner.’ Other non-owned auto clauses refer to permission of the owner or ‘person in lawful possession’.”
In the present case, it is clear that Mr. Jewell had lawful possession of the vehicle at the time of the accident. There was no unlawful activity being committed. Mr. Jewell knew that Mr. Tyler wanted his vehicle back and that Ms. Costa wanted the vehicle removed from her house. In fact, Ms. Costa, who had unrestricted utilization and access to the vehicle, specifically asked Mr. Jewell to return the vehicle to Mr. Tyler. Although he first refused, he reconsidered, went back to Ms. Costa’s house, retrieved the car keys, and proceeded to drive the car to Mr. Tyler’s house. At the time of the accident, Mr. Jewell had no intention of keeping the vehicle or using it for his own pleasure. Rather, his only intention was to do a favor for Mr. Tyler by returning his car to him. Moreover, the testimony of Mr. Tyler implied that he would not have had a problem with Wade Jewell returning the vehicle. Also, when Mr. Tyler went to the scene of the accident and talked to the state trooper, he did not advise the trooper that the car was being driven unlawfully. Given all these circumstances, we find that Mr. Jewell had lawful possession of the vehicle at the time of the accident. Thus, under the provisions of the State Farm policy, we find that coverage should be afforded to Mr. Jewell for the accident. Accordingly, we reverse the judgment of the trial court which found that the policy did not provide coverage.
REVERSED.

. Progressive Insurance Company was subsequently dismissed from the case when it was determined that the insurance policy on the Mustang had been canceled prior to the accident due to non-payment of premium.